IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF ALASKA

UNITED STATES OF AMERICA,

Plaintiff,

v.

DON DEVIET FRYE, SR.,

Defendant.

Case No. 3:24-cr-00117-TMB

ORDER ON MOTION TO SUPPRESS
[DKT. 23]

## I. INTRODUCTION

This matter comes before the Court on Defendant Don Deviet Frye, Sr.'s Motion to Suppress (the "Motion") at Docket 23.[1] The Government opposes the Motion.[2] An Evidentiary Hearing was held before the Court on March 3, 2025.[3] For the following reasons, the Motion is **DENIED**.

## II. BACKGROUND

On August 12, 2024, the Anchorage Police Department (APD) received an anonymous call regarding suspicious activity.[4] The caller reported that for several nights, vehicles would idle in front of her neighbor's apartment, her neighbor would hand something to the driver, then the driver would continue to idle.[5] She described a gold

---

[1] Dkt. 23 (Motion to Suppress Evidence).
[2] Dkt. 28 (Government's Opposition).
[3] Dkt. 41 (Minute Entry).
[4] Dkt. 27 (Conventionally Filed Exhibit 1: Audio-recording of call) (hereinafter "Ex. 1").
[5] *Id.* at 1:38–2:18

1

Chevrolet Impala that was currently idling in front of the apartment, but she could not see the license plate.[6] The caller asked to remain anonymous but did provide her address.[7]

*A. The Vehicle Stop*

Officer Hall responded to the address described by the caller and observed a vehicle matching the description provided by the caller.[8] Officer Hall then observed the vehicle begin to drive west on Northern Lights Boulevard.[9] He began following the vehicle and "saw it swerving in its lane of travel," which gave him "additional reasonable suspicion that the drive[r] could be impaired."[10] Officer Hall testified that while the vehicle never violated the speed limit, the vehicle would accelerate in a manner inconsistent with typical driving patterns.[11] Officer Hall followed the vehicle for about one minute before initiating a traffic stop.[12] The video of the stop does not show any other obvious traffic violations nor does the computer-aided dispatch (CAD) log indicate another reason for the stop.[13]

Officer Hall conducted a vehicle stop and contacted Frye, who was driving.[14] Another officer present after the stop told the vehicle passengers they had been stopped because of information provided in the anonymous call.[15]

---

[6] *Id.* at 3:00–3:18.
[7] *Id.* at 0:17–0:47; 3:23–3:30.
[8] Dkt. 23 at 9 (Conventionally Filed Exhibit A:CAD Log 8/12/24) (hereinafter "Ex. A").
[9] *Id.*; see also Dkt. 25 (Conventionally Filed Exhibit 2: Dash Cam Footage of Stop) (hereinafter "Ex. 2").
[10] Dkt. 28 at 3.
[11] Dkt. 41
[12] Ex. 2 at 0:00–1:03.
[13] *Id.*; Dkt. 23 at 9–11.
[14] Dkt. 23 at 10.
[15] Dkt. 25 (Conventionally Filed Exhibit C: Body Camera Footage of Stop) (hereinafter "Ex. C").

2

When Officer Hall ran a background check with Frye's ID, he discovered a warrant for Frye's arrest.[16] Officer Hall then told Frye to step out of the vehicle and conducted a pat search incident to arrest.[17] Frye told officers he did not have any weapons on him, but Officer Hall discovered a .22 caliber mini revolver handgun in Frye's jacket pocket.[18] Frye claimed the jacket belonged to his nephew, not to him.[19]

*B. Procedural History*

On October 17, 2024, Frye was charged by indictment with one count of being a Felon in Possession in violation of 18 U.S.C. §§ 922(g)(1) and 924(a)(8).[20] Frye subsequently filed a motion to suppress all evidence related to the searches and seizures performed by law enforcement during the vehicle stop.[21] The Government responded arguing that (1) there was reasonable suspicion for the vehicle stop because of the anonymous tip and the observed swerving, (2) the search of Frye's person was a lawful search incident to arrest, and, (3) regardless, the discovery of the arrest warrant attenuated the discovery of evidence from any potentially unconstitutional conduct involving the stop.[22]

At an evidentiary hearing before the Court on March 3, 2025, both parties presented evidence and legal arguments as to the constitutionality of the vehicle stop.[23] Officer Hall

---

[16] *Id.*
[17] *Id.*; Dkt. 28 at 4.
[18] Dkt. 23 at 10.
[19] *Id.*
[20] Dkt. 2 (Indictment) at 1.
[21] Dkt. 23.
[22] Dkt. 28 at 5–9.
[23] Dkt. 41.

testified that he stopped the vehicle because he observed it weaving within its lane, driving at an inconsistent speed, and using a turn signal without turning.[24] Although he testified that this conduct would have been sufficient to initiate a stop, he testified that the driving conduct, combined with the anonymous tip regarding suspected drug activity, gave him reasonable suspicion that the driver may be impaired.[25]

A video of dash camera footage from Officer Hall's vehicle and audio captured from the body camera of an additional law enforcement officer present at the stop were admitted and published into evidence.[26] The Court took the matter under advisement.

### III.    LEGAL STANDARD

*A. Reasonable Suspicion*

Police officers may conduct an investigatory stop where the "officer observes unusual conduct which leads him reasonably to conclude in light of his experience that criminal activity may be afoot."[27] To initiate a stop, an officer must have reasonable suspicion that the person stopped is, or is about to be, engaged in criminal activity.[28] When determining whether an officer has reasonable suspicion for a stop, the court "must look at the 'totality of the circumstances' of

---

[24] *Id.*
[25] *Id.*
[26] *Id.*; *see also* Ex. 2; Ex. C.
[27] *Terry v. Ohio*, 392 U.S. 1, 30 (1968).
[28] *United States v. Arvizu*, 534 U.S. 266, 273 (2002) (citing *United States v. Cortez*, 449 U.S. 411, 417–18 (1981).

4

each case to see whether the detaining officer has a 'particularized and objective basis' for suspecting legal wrongdoing."[29]

"A traffic violation alone is sufficient to establish reasonable suspicion," even if the violation is pretextual, the stop departed from regular practice, or the violation was "common and insignificant."[30] However, the Ninth Circuit has held that weaving within a lane, or even touching the fog line, a few times over less than a minute does not give rise to reasonable suspicion that a motorist is driving under the influence.[31]

If an anonymous tip "demonstrates 'sufficient indicia of reliability,'" it can "provide reasonable suspicion to make [an] investigatory stop."[32] Even if a tip provides "an accurate description of a subject's readily observable location and appearance," that information alone is insufficient to give rise to reasonable suspicion.[33] A tip must have further "indicia of reliability."[34] It must "be reliable in its assertion of illegality, not just in its tendency to identify a determinate person" to provide reasonable suspicion.[35]

### B. The Attenuation Doctrine

The discovery of an arrest warrant during an unlawful stop attenuates the connection between the unlawful stop and the evidence seized incident to arrest.[36] In *Utah v. Strieff*, a police

---

[29] *Id.*
[30] *United States v. Choudhry*, 461 F.3d 1097, 1100, 1102 (9th Cir. 2006).
[31] See *United States v. Colin*, 314 F.3d 439, 446–47 (9th Cir. 2002). In *Colin*, the Ninth Circuit also noted it was "curious that [the officer] did not conduct a sobriety field test or ask [the driver] if he had been drinking when he stopped the car" if he was suspicious the driver was driving under the influence." *Id.* at 446.
[32] *Navarette v. California*, 572 U.S. 393, 397 (2014).
[33] *Florida v. J.L.*, 529 U.S. 266, 272 (2000).
[34] *Id.* at 269.
[35] *Id.* at 272.
[36] *Utah v. Strieff*, 579 U.S. 232, 235 (2016).

officer responded to an anonymous tip regarding "narcotics activity" at a particular residence.[37] The officer saw Strieff exit the residence, detained him, discovered Strieff had an outstanding warrant, and then searched him incident to arrest.[38] The Supreme Court explained that "[e]vidence is admissible when the connection between unconstitutional police conduct and the evidence is remote or has been interrupted by some intervening circumstance, so that 'the interest protected by the constitutional guarantee that has been violated would not be served by suppression of the evidence obtained.'"[39] In determining the admissibility of evidence, the Court considered three factors: (1) temporal proximity between the initially unlawful stop and the search (2) the presence of intervening circumstances, and (3) the purpose and flagrancy of the official misconduct."[40] Based on its analysis of the factors, it determined that the evidence from the unlawful stop was admissible because it was sufficiently attenuated by the pre-existing arrest warrant.[41]

## IV. ANALYSIS

### A. The Court Declines to Address the Constitutionality of the Vehicle Stop

The question before the Court is whether the totality of the circumstances created reasonable suspicion, even if each of the proffered reasons, when viewed on their own, could be insufficient. Officer Hall testified that the totality of the circumstances—the anonymous call combined with the officer's observations that the car was weaving, failure to maintain a consistent speed, and early use of the turn signal—created reasonable suspicion of impaired driving.[42] Like in *Florida v. J.L.,* corroboration of the vehicle description and location provided by the anonymous

---

[37] *Id.*
[38] *Id.* at 235–36.
[39] *Id.* at 238 (quoting *Hudson v. Michigan*, 547 U.S. 586, 593 (2006)).
[40] *Id.* at 239.
[41] *Id.* at 242.
[42] Dkt. 41.

caller was insufficient to give rise to reasonable suspicion without further indicia of reliability.[43]

Likewise, under the Ninth Circuit's holding in *Colins,* the weaving within the lane of travel is insufficient to give rise to reasonable suspicion of impaired driving on its own.[44]

In light of the evidence provided by both parties, this question presents a close call. However, the Court need not reach the constitutionality of the vehicle stop because the lawful search incident to arrest was attenuated from any potentially unconstitutional conduct by the discovery of the arrest warrant.

### B. The Warrant Attenuated the Search from the Stop

Under the Supreme Court's holding announced in *Strieff*, the warrant discovered by the officer attenuates it from the unconstitutional stop. Here, Frye argues that the evidence found during the stop is inadmissible because "[w]hen police conduct an unreasonable search or seizure, the exclusionary rule usually vindicates the Fourth Amendment's protections by keeping out the unlawfully obtained evidence."[45] The Government argues that even if the stop was unsupported, the warrant is "'a sufficient intervening event to break the causal chain between the unlawful stop and the discovery of' the incriminating evidence."[46] The Government further asserts that Officer Hall "acted in good faith reliance on his own observations, as well as in taking steps to corroborate an anonymous caller's report that suggested criminal activity was afoot, and in addressing an active arrest warrant once he discovered it."[47]

---

[43] *J.L.*, 529 U.S. at 268, 270.
[44] *Colin*, 314 F.3d at 449.
[45] Dkt. 23 at 3 (citing *Wong Sun v. United States*, 371 U.S. 471, 484-85 (1963); *United States v. Smith*, 196 F.3d 1034, 1040 (9th Cir. 1999)).
[46] Dkt. 28 at 2, 9–10 (citing *Strieff*, 579 U.S. at 239).
[47] Dkt. 28 at 10.

While the "temporal proximity" between the stop and the search weighs against the admissibility of the evidence,[48] the "presence of intervening circumstances," *i.e.* discovery of the warrant, and the "purpose" and lack of "flagrancy" of the misconduct weigh heavily in favor of admissibility.[49] Further, even if the vehicle stop were unconstitutional, the stop appears no more than an "error[] in judgment," like in *Strieff*, rather than flagrant police misconduct.[50] Therefore, the Court finds that the evidence discovered during the search incident to arrest is sufficiently attenuated by the pre-existing arrest warrant.

C. *The Search of Frye's Pocket Was a Lawful Search Incident to Arrest.*

Once the officers discovered the warrant, they had an obligation to arrest Frye.[51] And once they arrested Frye, it was "undisputedly lawful" to search Frye incident to arrest to ensure the officer's safety.[52] Therefore, the Court holds that the evidence obtained from the lawful search incident to the arrest of Frye is admissible.

## V. CONCLUSION

For the foregoing reasons, the Court **DENIES** the Motion to Suppress Evidence at Docket 23.

IT IS SO ORDERED.

Dated at Anchorage, Alaska, this 10th day of March, 2025.

/s/ _Timothy M. Burgess_____
TIMOTHY M. BURGESS
UNITED STATES DISTRICT JUDGE

---

[48] 579 U.S. at 239–40.
[49] *Id*. at 240–41.
[50] *Id.*
[51] *Strieff*, 579 U.S. at 240.
[52] *Id.* at 240–41.